**NONPRECEDENTIAL DISPOSITION**
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted July 27, 2011[*]
Decided August 3, 2011

**Before**

RICHARD D. CUDAHY, *Circuit Judge*

DIANE P. WOOD, *Circuit Judge*

JOHN DANIEL TINDER, *Circuit Judge*

No. 10-3677

| | |
|---|---|
| JEFFREY S. AKRIGHT, <br>     *Plaintiff-Appellant*, | Appeal from the United States District <br> Court for the Western District of Wisconsin. |
| *v.* | No. 09-cv-648-bbc |
| RANDALL HEPP and APRIL FUMOY, <br>     *Defendants-Appellees*. | Barbara B. Crabb, <br> *Judge*. |

**O R D E R**

Jeffrey Akright suspected officials at Jackson Correctional Institution in Wisconsin of illegally overpricing canteen items by more than 10% above cost and wanted prison canteen records to prove it. Because Wisconsin's open-records law prohibits him, as a prisoner, from requesting records that do not refer to him, *see* WIS. STAT. § 19.32(3), he asked his grandmother to get them for him. Prison officials gave her a current canteen price list, a list of average costs, purchase invoices, and copies of canteen policies, but warned her not to share them with an inmate. When she mailed them to Akright anyway, April Fumoy, the

---

[*] After examining the briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* FED. R. APP. P. 34(a)(2)(C).

mailroom supervisor at Jackson, confiscated the package and notified Akright that he couldn't have it because it contained records produced from an open-records request, contraband under the prison's rules. Akright was put in disciplinary segregation for attempting to possess contraband, and defendant Randall Hepp, the warden, affirmed the disciplinary action.

Akright has now sued Hepp and Fumoy under 42 U.S.C. § 1983, maintaining that this contraband policy violates his rights under the First Amendment. The district court granted summary judgment to the officials, concluding that the policy is reasonably related to legitimate penological interests that the prison identified during the litigation. Akright challenges the propriety of relying on interests that a prison identifies only after the onset of litigation, but because our en banc decision in *Hammer v. Ashcroft*, 570 F.3d 798 (7th Cir. 2009), forecloses that argument, we affirm.

In moving for summary judgment, Hepp and Fumoy argued that they were justified in confiscating Akright's mail for two reasons. First, Akright was trying to circumvent the open-records law, which is designed, they argued, both to reduce the volume of burdensome record requests from prisoners and to prevent inmates from seeking information that might reveal the prison's security operations. Second, they asserted that giving prisoners access to records containing vendor account information could facilitate fraud and smuggling: inmates might use vendor accounts to fraudulently charge the prison's account or bring into prison contraband using counterfeit vendor packaging.

The district court concluded that banning inmate access to the canteen records is reasonably related to a legitimate penological interest. Although the court was skeptical that concerns of fraud and smuggling justified the policy, it determined that forbidding inmates from obtaining prison records through relatives prevented prisoners from circumventing the open-records law, which in turn helped to limit the burden of frivolous prisoner requests and preserve oversight of the information distributed to inmates.

Akright limits his appeal to a single contention: the district court erroneously allowed Hepp and Fumoy to justify their actions using "post-hoc explanations" advanced during the litigation. He doesn't dispute that their concerns about security and undue burden are legitimate; instead he argues that they needed to proffer those reasons back when they adopted the policy in order to rely on them now.

Akright's argument is at odds with *Hammer*, 570 F.3d at 803. Citing public statements that prison officials made when they banned face-to-face inmate interviews with the media, the inmate in *Hammer* argued that the ban was impermissibly intended to silence disfavored viewpoints rather than enhance security, as the officials asserted during litigation. *Id.* at 801-

02. We upheld the ban, seeing no reason "why one bad motive would spoil a rule that is adequately supported by good reasons," like prison security. *Id.* at 803. The inquiry is an objective one rather than based on the motive for enacting the policy. *Id.* Because Akright does not contest that the prison's security and undue-burden rationales can justify banning the records, *Hammer* forecloses Akright's argument that the *real* reason for the contraband policy is an impermissible one. Actually, Akright's case is substantially weaker than the case in *Hammer.* Unlike the prisoner in *Hammer*, Akright presents no evidence that the rationale for the records ban that the defendants have advanced here is different from the original motive for enacting the ban. Although Akright attacks *Hammer* as wrongly decided, he does not present a compelling reason to revisit that decision. As he makes no other arguments on appeal, the district court's judgment must stand.

AFFIRMED.